**No. 22-17008**

_____

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

KRISTIN HART, individually and as co-successor-in-interest
to Decedent KYLE HART, et al.,

Plaintiffs - Appellees,

vs.

CITY OF REDWOOD CITY, et al.,

Defendants - Appellants.

_____

On Appeal from the United States District Court
for the Northern District of California
No. 4:21-cv-02653-YGR, Hon. Yvonne Gonzalez Rogers

_____

## APPELLANTS' RESPONSE TO APPELLEES' PETITION FOR
## REHEARING EN BANC
## Decision: April 19, 2024

_____

Kevin E. Gilbert, Esq. (SBN: 209236)
Carolyn M. Aguilar, Esq. (SBN: 289550)
ORBACH HUFF & HENDERSON LLP
6200 Stoneridge Mall Road, Suite 225
Pleasanton, CA 94588
Telephone: (510) 999-7908
Email: kgilbert@ohhlegal.com/caguilar@ohhlegal.com

Attorneys for Defendants - Appellants
CITY OF REDWOOD CITY, DANIEL MULHOLLAND, ROMAN GOMEZ, and
LEILA VELEZ

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ............................................................1

II.   JURISDICTION IS APPROPRIATE...............................3

III.  PLAINTIFFS' DISPUTED FACTS ARE IMMATERIAL ..........................6

IV.   PLAINTIFFS APPLY AN INCORRECT STANDARD IN EVALUATING THE CLAIMS ....................................9

V.    THE GRANT OF QUALIFIED IMMUNITY IS PROPER AND CONSISTENT WITH SUPREME COURT PRECEDENT .......................14

VI.   CONCLUSION.............................................................17

Form 11. Certificate of Compliance for Petitions for Rehearing/Responses ........18

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Federal Cases**</u>

*Acri v. Varian Assoc., Inc.*,
  114 F.3d 999 (9th Cir. 1997) ...................................................................8

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011)...............................................................................17

*Behrens v. Pelletier*,
  516 U.S. 299 (1996).................................................................................3

*Bryan v. MacPherson*,
  630 F.3d 805 (9th Cir. 2010) .................................................................13

*Chew v. Gates*,
  27 F.3d 1432 (9th Cir. 1994) .................................................................10

*City & Cnty. of San Francisco v. Sheehan*,
  575 U.S. 600 (2015)........................................................................ 16-17

*Cnty. of Los Angeles, Calif. v. Mendez*,
  581 U.S. 420 (2017)...............................................................................11

*Deorle v. Rutherford*,
  272 F.3d 1272 (9th Cir. 2001) .................................................11, 14, 15

*Graham v. Connor*,
  490 U.S. 386 (1989)........................................................10, 11, 12, 13

*Gregory v. Cnty. of Maui*,
  523 F.3d 1103 (9th Cir. 2008) .................................................................8

*Hayes v. County of San Diego*,
  736 F.3d 1223 (9th Cir. 2013) .........................................................14, 15

*Hopson v. Alexander*,
  71 F.4th 692 (9th Cir. 2023) ...................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

*Jeffers v. Gomez*,
 267 F.3d 895 (9th Cir. 2001) ...................................................................4

*Kisela v. Hughes*,
 584 U.S. 100 (2018)..................................................................... 15, 16

*Knox v. Southwest Airlines*,
 124 F.3d 1103 (9th Cir. 1997) ...............................................................4

*Lal v. California*,
 746 F.3d 1112 (9th Cir. 2014) ............................................................10

*Lowry v. City of San Diego*,
 858 F.3d 1248 (9th Cir. 2017) ........................................................7, 11

*Newmaker v. City of Fortuna*,
 842 F.3d 1108 (9th Cir. 2016) ...............................................................9

*Pearson v. Callahan*,
 555 U.S. 223 (2009)...............................................................................5

*Plumhoff v. Rickard*,
 572 U.S. 765 (2014)...............................................................................4

*Reynolds v. Cnty. of San Diego*,
 84 F.3d 1162 (9th Cir. 1996) ................................................................8

*S.R. Nehad v. Browder*,
 929 F.3d 1125 (9th Cir. 2019) ........................................................14, 15

*Saucier v. Katz*,
 533 U.S. 194 (2001)...............................................................................5

*Scott v. Harris*,
 550 U.S. 372 (2007)...............................................................................6

*Scott v. Henrich*,
 39 F.3d 912 (9th Cir. 1994) ................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

*Smith v. Agdeppa*,
    81 F.4th 994 (9th Cir. 2023) ...............................................................4, 16

*T. W. Elec. Serv., Inc. v. Pacific Elec. Contractors Association*,
    809 F.2d 626 (9th Cir. 1987) ...................................................................6

*Vos v. City of Newport Beach*,
    892 F.3d 1024 (9th Cir. 2018) ........................................................14, 15

## <u>Other Authorities</u>

Fed. R. App. P. 32(a)(4)-(6)......................................................................18

## I. INTRODUCTION

Clearly displeased with the Panel Opinion ("Opinion"), Plaintiffs request rehearing en banc, claiming that the Opinion ignores facts and is inconsistent with established precedent. Those erroneous conclusions are reached only by distorting the factual record and misinterpreting decades of published cases. For example, despite asserting that the Panel "ignore[d] evidence," Plaintiffs fail to identify any "evidence" that supports their contention. Rather, their arguments are based upon speculation and conjecture; they claim there was a "factual dispute" as to whether Kyle Hart ("Hart") was running or walking as he advanced upon the officers, which was ignored by the Panel. But the verb used to describe Hart's advance is irrelevant as the undisputed evidence shows the exact distance covered by Hart over the 5.9 seconds prior to lethal force being used. Regardless of whether Hart was walking, jogging, running or otherwise, he was armed with a knife, ignored commands to drop the weapon, was acting erratically, and closed to within an arms-reach of the officers in a mere 5.9 seconds.

Moreover, despite Plaintiffs' contrary contentions, there are no genuine issues of material fact to preclude qualified immunity. Very simply stated, there is no evidence, save Plaintiffs' pure speculation, misrepresentations, and conjecture, that Defendant-Appellant Officer Roman Gomez's ("Gomez") and Officer Leila Velez's ("Velez") (collectively "Officers") testimony is anything other than

- 1 -

credible. Furthermore, *all* of the evidence, including Plaintiffs' own expert's testimony, demonstrates Hart's imminent threat. What Plaintiffs refuse to accept is that their allegedly disputed facts are not material and do not negate the imminent threat that Hart posed when he charged the Officers with a knife. Every person, including police officers, has a right to defend their life in the face of a threat. This is an undeniable truism that Plaintiffs simply ignore.

Even if Plaintiffs' deliberate misconstruction of the record is accepted, such conclusions are immaterial to the qualified immunity analysis as they do *not* change the fact that Hart was an imminent threat at the moment lethal force was used. There exists no clearly established law demonstrating that Gomez's actions were unlawful. Accordingly, he is entitled to qualified immunity. The holdings of the Opinion correctly apply the legal precedent and standards to the undisputed facts in this case. The finding of qualified immunity is appropriate and any further rehearing is unwarranted and must be denied.

Plaintiffs also ignore the copious legal authorities cited in the Opinion, instead advocating for holdings that would be in direct conflict with established precedent. If this Court were to uphold Plaintiffs' position, the resulting opinion would conflict with decades of Supreme Court and Ninth Circuit precedent.

Simply put, the Opinion is well-reasoned and is absolutely in harmony with established precedent. In fact, the Opinion relies heavily on Supreme Court

precedent for virtually every issue, providing an unwavering foundation for the Panel's conclusions. Yet, Plaintiffs invite the Court to deviate from that precedent, which would almost certainly result in the Supreme Court again chastising the Ninth Circuit, as it has done in years past. Accordingly, rehearing is entirely unwarranted and the Petition should be denied.

## II.   JURISDICTION IS APPROPRIATE

Despite both the District Court and Panel rejecting Plaintiffs' arguments, they again assert that this Court lacks jurisdiction due to the existence of disputed facts. Plaintiffs arrive at that conclusion only through a tortured analysis of the "facts," ignoring long-standing Supreme Court and Ninth Circuit precedent and fixating on issues that are simply not material.

It is axiomatic that appellate review regarding application of qualified immunity is appropriate even when a purported dispute of material fact exists. *Behrens v. Pelletier*, 516 U.S. 299 (1996); Opinion at 10. In *Behrens*, the Supreme Court held that the district court's denial of summary judgment where "material issues of fact remain" did not automatically render the denial of immunity non-appealable. *Id*., at 313. Rather, the *Behrens* Court held that the critical issue is whether the facts that are disputed are *material* to the immunity defense. *Id*. In response to Plaintiffs' Motion to Certify Appeal as Frivolous, the District Court concluded that this appeal "raises questions of law regarding this Court's

application of the qualified immunity standard, and is not frivolous." 2-ER-49; see also *Smith v. Agdeppa*, 81 F.4th 994, 1001 (9th Cir. 2023) ("The factual disputes that the district court highlighted . . . do not preclude our review because we 'have jurisdiction to review an issue of law determining entitlement to qualified immunity—even if the district court's summary judgment ruling also contains an evidence-sufficiency determination.'"); *Knox v. Southwest Airlines*, 124 F.3d 1103, 1107 (9th Cir. 1997) (defendant may bring an immediate appeal regarding whether the alleged conduct met the standard of "objective legal reasonableness[.]").

Furthermore, whether factual disputes are "material" is a question of law, which is appropriate for appellate review. Opinion at 11, quoting *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001) ("*any* issue of law, including the materiality of the disputed issues of fact, is a permissible subject for appellate review."). Even if there was some metaphysical dispute as to a material fact, it would be insufficient to preclude appellate review; whether an officer violated a constitutional right *is a question of law*. *Plumhoff v. Rickard*, 572 U.S. 765, 773 (2014) (explaining that the questions in the qualified immunity analysis, including whether a violation of the Fourth Amendment occurred "raise legal issues" which are "quite different from any purely factual issues that the trial court might confront if the case were tried; deciding legal issues of this sort [i.e. the qualified immunity analysis] is a core responsibility of appellate courts, and requiring appellate courts to decide

- 4 -

such issues is not an undue burden."). Importantly, in analyzing qualified immunity on appeal, the reviewing court may review *either* of the two prongs of the qualified immunity question, i.e. 1) whether there was a constitutional violation, or 2) whether a right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 239 (2009). The Panel was not limited to only analyzing the clearly established question, as Plaintiffs imply.

Prior to the Supreme Court's decision in *Pearson,* courts analyzed the qualified immunity question in a two-step process, consistent with *Saucier v. Katz*, 533 U.S. 194 (2001), addressing the constitutional question first before proceeding to the clearly established question. *Pearson*, 555 U.S. at 231-232. In overruling the two-step process from *Saucier*, the *Pearson* Court recognized that there may be cases where it is appropriate to reach the question of whether the contours of the right at issue were clearly established prior to developing a factual record. *Id.*, at 239-240. However, courts still maintain discretion to determine "the more difficult question" of whether a constitutional violation existed at all. *Id.*, at 244 ("Our decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases."). Thus, that the Panel followed *Saucier* and reached the "more difficult" constitutional question, and then the

clearly established question, does not render the Opinion inconsistent with existing precedent. Indeed, it reiterates long-standing precedent.

Accordingly, this Court has jurisdiction to decide this appeal regardless of a purported dispute of fact. The Panel also has authority to decide whether Gomez's actions violated the Constitution.

## III. PLAINTIFFS' DISPUTED FACTS ARE IMMATERIAL

In addition to their jurisdictional challenges, Plaintiffs further contend that critical factual disputes existed, which must be resolved by a jury. But that assertion is largely based upon the mistaken premise that the alleged "factual disputes" are material. Contrary to Plaintiffs' assertions, the Panel found that the allegedly disputed facts were not material as none negated the imminent threat that Hart posed. Furthermore, Plaintiffs failed to satisfy their burden of persuasion to present "significant probative evidence" supporting their assertions, as opposed to relying on mere speculation and conjecture, which is insufficient to create a material disputed fact. *T. W. Elec. Serv., Inc. v. Pacific Elec. Contractors Association*, 809 F.2d 626, 630-631 (9th Cir. 1987) (emphasis added); see also *Scott v. Harris*, 550 U.S. 372 (2007) ("...the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."). Curiously, Plaintiffs simply ignore that their prior evidentiary

submissions were deemed speculative and insufficient, instead attempting to wish away those conclusions. Opinion at 23-24.

Plaintiffs also do not address the points made by the District Court or the Panel demonstrating the insufficiency of their evidence, both concluding that the opinions of Plaintiffs' expert as to whether the Officers could have repositioned were pure speculation. 1-ER-17:20-21; Opinion at 23-24. As a result, there is simply no evidence to support that the Officers could have moved or taken other evasive actions, as Plaintiffs speculate. In any event, the Officers clearly testified to their *in*ability to have moved out of the way of Hart's knife. 2-ER-284:12-25. Moreover, and as discussed below, the Officers were not required to have taken evasive actions or exhausted lesser degrees of force before using lethal force to defend against an imminent threat. *Lowry v. City of San Diego*, 858 F.3d 1248, 1259 (9th Cir. 2017).

Plaintiffs further distort the facts regarding Velez's description of Hart's advance – claiming that she testified Hart was "walking." But such a representation is inconsistent with the actual testimony. At the end of Velez's post-incident interview, she clarifies that Hart "wasn't just walking," but was instead "*charging*" at the Officers. 3-ER-472 at 34:51-35:10. Nevertheless, this "brisk walk" was accepted as true, but it did not negate the fact that Hart reached the Officers in less than 6 seconds.

While Plaintiffs' attempt to fabricate factual disputes, none actually exist on any material issue. Rather, it is undisputed that: (1) Hart was acting erratically (4-ER-723:7:17); (3) Hart was holding a knife throughout his entire encounter with the Officers (4-ER-726:24-728:7); (4) Hart failed to respond to the commands of the Officers (4-ER-793:8-19; 4-ER-731:21-25; 4-ER-749:19-25; 4-ER-737: 3:06-3:09); (5) Hart was moving towards the Officers and, at most, reached them within 6 seconds of the Officers entering the yard, no matter where he started (4-ER-820:19-24); and (6) Hart fell to rest at Gomez's feet (4-ER-800:11-14, 4-ER-819:14-18). Plaintiffs have failed to present any evidence to contradict these *material* facts. In fact, Plaintiffs concede most of these facts.

Unable to show that any of the material facts are disputed, Plaintiffs next attempt to impeach the credibility of the Officers based on minor inconsistencies in their statements. Significantly, Plaintiffs' interpretation of those statements not only misrepresents the evidence, but misstates the legal analysis. A minor inconsistency in officer testimony does not alone create a dispute of material fact. *Gregory v. Cnty. of Maui*, 523 F.3d 1103, 1107-08 (9th Cir. 2008); *Reynolds v. Cnty. of San Diego*, 84 F.3d 1162, 1169-70 (9th Cir. 1996) ("Illuminating a potential minor inconsistency . . . is insufficient to raise a genuine issue of material fact regarding the reasonability of the use of force . . ."), *overruled on other grounds by Acri v. Varian Assoc., Inc*., 114 F.3d 999 (9th Cir. 1997).

- 8 -

Plaintiffs cite *Newmaker v. City of Fortuna*, 842 F.3d 1108 (9th Cir. 2016) to support that issues of credibility may preclude summary judgment. Contrary to their argument, however, *Newmaker* involved officers whose credibility was *seriously* in question (because the officers' testimony was derived only after receiving suggestions from an investigator and was also directly contradicted by video evidence) and where the officers' testimony involved *highly* material issues of fact (such as whether the subject could have been swinging a baseball bat at the officers at the time they used force), unlike this case. *Id.*, at 1111-16.

Plaintiffs cannot meet their burden by cherry-picking the facts and selectively editing the law. While the facts are construed in Plaintiffs' favor, the facts that are unfavorable to Plaintiffs cannot simply be ignored because Plaintiffs don't like them. Opinion at 11 ("we may consider facts offered by the defendant that are uncontradicted by any evidence in the record"), quoting *Hopson v. Alexander*, 71 F.4th 692, 697 (9th Cir. 2023). Ultimately, Plaintiffs failed to meet their burden and have not provided any evidence to refute that Hart posed an imminent threat to the Officers. Accordingly, the Petition is without merit.

## IV. PLAINTIFFS APPLY AN INCORRECT STANDARD IN EVALUATING THE CLAIMS

Next, Plaintiffs assert that the Panel ignored issues of material fact, which resulted in it reaching a conclusion that was unsupported. However, Plaintiffs'

purported facts are not relevant to evaluating excessive force or qualified immunity. In *Graham v. Connor,* 490 U.S. 386 (1989), the High Court clarified the factors that are relevant in evaluating claims under the Fourth Amendment, which include "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." Opinion at 12; *Id.*, at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.*, at 396-97. The "most important" factor – as recognized by over three decades of precedent – is whether the suspect posed an "immediate threat to the safety of the officers or others." *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994); *Lal v. California*, 746 F.3d 1112, 1117 (9th Cir. 2014).

Plaintiffs' purported factual disputes are not relevant to any of these factors. Nor do Plaintiffs address the "most important" factor – the immediate threat posed by Hart. Instead, Plaintiffs focus on alleged tactical failures and possible lesser alternatives of force. Plaintiffs also misrepresent prior precent, arguing that "this

Court has long required officers to retreat, redeploy, create time and distance, and warn suspects that they will use deadly force…," citing to *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001). Petition at 17. Yet, neither *Deorle*, nor any of the referenced cases, reached such a conclusion. Rather, *Deorle* addressed the consideration of "'[w]hat other tactics if any were available' *to effect the arrest*." *Id.*, at 1282, emphasis added. Neither *Deorle*, nor any other published case, has mandated that officers are required to use the least amount of force possible in responding to an immediate or imminent threat. In fact, this Court expressly confirmed that "officers are not required to use the least intrusive degree of force possible." *Lowry*, 858 F.3d at 1259 (en banc) (internal quotation marks omitted).

Sixteen years after *Deorle*, the Supreme Court again provided guidance on the proper analysis of an excessive force claim, stating unambiguously as follows:

> **The framework for analyzing excessive force claims is set out in** ***Graham***. **If there is no excessive force claim under** ***Graham***, **there is no excessive force claim at all.** To the extent that a plaintiff has other Fourth Amendment claims, they should be analyzed separately.

*Cnty. of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 429 (2017) (emphasis added). Nowhere in *Graham* is pre-shooting conduct or tactical positioning discussed as an element of an excessive force claim. Indeed, the Supreme Court stated explicitly in *Mendez* that such considerations *are not* part of the excessive force analysis under *Graham*. Moreover, the fact that some lesser application of

force, or some other police act, might later be seen as preferable by a party (or their expert) is not conclusive to whether the force actually used during the incident violated the subject's constitutional (or legal) rights. *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994). "A reasonable use of deadly force encompasses a range of conduct, and the availability of a less-intrusive alternative will not render conduct unreasonable." *Id.*, at 915.

Further, such second-guessing of the Officers' tactical conduct is exactly the type of "20/20 hindsight" *Graham* cautioned must be avoided. *Graham*, 490 U.S. at 396-97. Plaintiffs' argument regarding the Officers' positions is also without merit. Where the Officers were positioned relative to each other does not relate to any of the *Graham* factors, and does not take away from the fact that both Officers testified that Hart was approaching them with a knife and that they perceived Hart as a deadly threat. 4-ER-790:4-791:18; 4-ER-765:2-7; 4-ER-802:20-22. Plaintiffs' obstinance in ignoring the "most important" factor in the excessive force analysis does not render the Panel's decision improper.

Next, Plaintiffs and the Amicus Curiae aver that the Opinion should be disregarded because it does not require officers to "make a greater effort to take control of the situation through less intrusive means" where mental illness may be a factor. Amicus Brief at 3. But again, such assertions conflict with this Court's opinions. Indeed, the Ninth Circuit has "refused to create two tracks of excessive

force analysis, one for the mentally ill and one of serious criminals." *Bryan v. MacPherson*, 630 F.3d 805, 829 (9th Cir. 2010). Rather, *Graham* directs the analysis.

Finally, Plaintiffs misrepresent the "crime-at-issue" factor. Rather than conceding that Hart was obviously an immediate threat as he advanced with a knife (as Plaintiffs' own police practices expert acknowledged [4-ER-811:11-20]), Plaintiffs instead distort this factor, analyzing only the crimes committed by Hart *before* the Officers' arrival. Plaintiffs side-step and contradict the edicts in *Graham*, which requires the analysis of reasonableness to address "the moment" force is used. *Graham*, 490 U.S. at 396 ("With respect to a claim of excessive force, the same standard of reasonableness ***at the moment*** applies." Emphasis added.). Since excess force claims are analyzed at the moment force is employed, any disputes related to how Hart was holding the knife and which direction he was facing when the Officers entered the yard are immaterial; these facts have no relevancy to "the moment" force was used.

The Panel's evaluation of the excessive force claim perfectly tracked the standards enunciated by the High Court, including assessing each of the *Graham* factors in finding Gomez's actions to be objectively reasonable. Opinion at 13-22. The Opinion is well-supported by decades of precedent, which Plaintiffs simply ignore.

**V. THE GRANT OF QUALIFIED IMMUNITY IS PROPER AND CONSISTENT WITH SUPREME COURT PRECEDENT**

Plaintiffs next challenge the grant of qualified immunity, arguing that the contours of Hart's rights were clearly established by a quartet of prior cases. Specifically, Plaintiffs aver that *Nehad* (*S.R. Nehad v. Browder*, 929 F.3d 1125, 1130 (9th Cir. 2019)), *Hayes* (*Hayes v. County of San Diego*, 736 F.3d 1223, 1233-34 (9th Cir. 2013)), *Vos* (*Vos v. City of Newport Beach*, 892 F.3d 1024, 1031 (9th Cir. 2018)), and *Deorle* (*Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001)) clearly established that the use of lethal force on a mentally ill individual who poses an imminent threat is inappropriate, unless an officer has first attempted to "retreat, redeploy, create time and distance …. particularly when dealing with emotionally disturbed suspects." Not only is Plaintiffs' interpretation incorrect, but each of those matters are factually inapposite.

In *Nehad*, just after midnight, an officer responded to a report that "a male in a back lot was threatening people with a knife." *Nehad*, 929 F.3d at 1130. Officer Browder arrived, allegedly told Nehad to "stop and drop it," but nonetheless shot and killed Nehad less than five seconds after exiting his vehicle. Significantly, the officer admitted he never saw a weapon in Nehad's hands and there was no evidence that Nehad was even approaching the officer. *Id.*, at 1131. In contrast, it is undisputed that Hart was holding a knife and advanced on the Officers in a

threatening manner. Additionally, *Nehad* was decided after the incident with Hart, so it is not determinative of this incident and Officer Gomez's actions therein.

*Hayes* is also distinguishable. Not only did Hayes comply with the officers' orders to "show" his hands (*Hayes*, 736 F.3d at 1233-34), but there was eyewitness testimony demonstrating that Hayes did not "charge" the officers. *Id.* Hayes also told the officers that they could "take him to jail," further evidencing his compliance. *Id.*

As to *Vos* and *Deorle*, neither is factually similar. First, the suspects in both *Vos* and *Deorle* were surrounded by dozens of officers, with less-lethal options clearly available. *Vos*, 892 F.3d at 1032; *Deorle*, 272 F.3d at 1276-77. Second, the officers in *Vos* and *Deorle* had 20-40 minutes to observe the suspects and determine the lack of imminent threat the suspects posed. *Vos*, at 1030, 1032; *Deorle*, at 1276-77. Third, the offending officer in *Deorle* acted in derogation of his commanding officers in shooting Deorle. *Deorle*, at 1277-78. Similarly, lethal force was also accidentally used in *Vos* because of a supervisor's vague command. *Vos*, at 1029-30. Importantly, the Supreme Court has repeatedly admonished the Ninth Circuit for "read[ing] its decision in [*Deorle*] too broadly in deciding whether a new set of facts is governed by clearly established law," yet that is precisely what Plaintiffs urge this Court to do. *Kisela v. Hughes*, 584 U.S. 100, 106 (2018).

In contrast, the Officers here had no backup, were confronted with an individual that was both armed and noncompliant, with less than 6 seconds to respond to Hart's armed advance. The facts of this matter are nothing like those addressed in the foregoing cases. As this court recently confirmed: For a right to be clearly established, it must be "sufficiently clear that every reasonable official would understand that what he is doing violates that right." [ ] This is a high standard: "existing precedent must have placed the statutory or constitutional question beyond debate." [ ] This means that "every 'reasonable official would understand that what he is doing' is unlawful." [ ] The "rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.'" [ ] This "demanding" requirement "protects 'all but the plainly incompetent or those who knowingly violate the law'" and calls for "a high 'degree of specificity.'"

*Smith v. Agdeppa*, 81 F.4th 994, 1001 (9th Cir. 2023), internal citations removed.

Unless a violation is "obvious," there must be a similar case on point to demonstrate that Gomez's actions were unlawful. The "situations where a constitutional violation is 'obvious,' in the absence of any relevant case law, are 'rare.'" *Smith*, at 1005-1006. Here, there are no cases that demonstrate using lethal force was unlawful in the specific circumstances confronting Gomez. Consequently, Gomez is entitled to qualified immunity.

Adoption of Plaintiffs' position would directly conflict with established precedent and would be a repeat of what the Ninth Circuit has been admonished for doing in the past – casting the clearly established laws at too high a level of generality to deny qualified immunity. *Kisela*, 584 U.S. at 106; *City & Cnty. of*

*San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015); *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

The Opinion is entirely consistent with existing Supreme Court and Ninth Circuit precedent. Therefore, rehearing is unwarranted.

## VI. CONCLUSION

Plaintiffs' request for en banc consideration should be denied. The Opinion is well supported and entirety consistent with established precedent. Furthermore, the issues advanced by Plaintiffs do not present a question of exceptional importance, as is necessary to grant rehearing. If the Court were to agree with Plaintiffs' position, it would directly contradict decades of Supreme Court precedent and result in irreconcilable conflicts of law. Moreover, adopting Plaintiffs' position would again place the Ninth Circuit in danger of admonishment by the Supreme Court for failing to properly analyze whether a right was clearly established. Consequently, the Petition for Rehearing is without merit and should be denied.

Dated: July 15, 2024      Respectfully submitted,
**ORBACH HUFF + HENDERSON**

BY: */s/ Kevin E. Gilbert*
     Kevin E. Gilbert
     Carolyn M. Aguilar
     Attorneys for Defendants - Appellants
     CITY OF REDWOOD CITY, DANIEL
     MULHOLLAND, ROMAN GOMEZ,
     and LEILA VELEZ

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 11. Certificate of Compliance for Petitions for Rehearing/Responses**

**9th Cir. Case Number(s) 22-17008**

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

**[X]** Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and contains the following number of words: 3,962.

AND

**[X]** In compliance with the Court's June 24, 2024, Order at Docket 50, which provides that the response shall not exceed 4,200 words.

**Signature** */s/ Kevin E. Gilbert*      **Date** July 15, 2024

- 18 -